Your honors, may it please the court. I'm Sarah Monahan, attorney for the appellants in the case, Officer Zachary Ware and the city of Siloam Springs, Arkansas. This is the appellant's second interlocutory appeal of the district court's denial of qualified immunity to Officer Zachary Ware and tort immunity to the city of Siloam Springs. This case arises out of a traffic stop and subsequent arrest of the appellee, Mr. Lockhart, for DWI. Counsel, I may interrupt just for a moment, please, and ask you what your understanding might be of what's still before us here. Do you think the detention claim is still being pursued, unlawful detention claim? Yes, I believe before the court today is whether or not their officer, Ware, is entitled to qualified immunity on the unlawful detention claim. Well, really, it was the arrest, isn't that right? Yes, that's correct, the arrest. Well, some detention got solved the first time. The stop was valid, was valid. The question is the arrest. Yes, the remaining question for the court to decide is whether the arrest that occurred after the stop was valid. Was the gentleman released at the police station? He was taken to the police station, booked into the jail, and then released. Okay, so there's no sort of intervening detention claim at the station. Is that gone? Is that completely out of the case? The claim that remains, in addition to the unlawful arrest claim, is the malicious prosecution claim against the city. The what? The malicious prosecution claim. That was what was on the first appeal, wasn't it? This court, the initial ruling by this court was unclear because it did say it was affirming the district court's denial of tort immunity to the city of Salem Springs, but it also said that the remaining malicious prosecution issue depended in significant part on what occurred between the time Officer Ware initiated the stop and when he arrested Lockhart. And that was what the court remanded. That's what the court's remand to the district court was based on. There's an unlawful prosecution claim. Malicious prosecution. Well, there's an unlawful prosecution claim against Ware, isn't there? The district court constricted... I'm just kind of confused about... I realize what the main contention here, what the main beef is. Yes. I'm trying to clear out some of this underbrush before we get going. I don't mean to denigrate it that way. I'm just trying to get a little traction. The remaining claims are unlawful arrest under the Fourth Amendment against Officer Ware and malicious prosecution, which the district court construed as a claim against the city of Salem whether or not there was probable cause for the arrest. So either this court can reverse the... Well, not entirely as to the malicious prosecution. What happened afterward, after the arrest is very significant. How can you just brush aside the prosecutorial decision? Yes, I believe the circumstances that occurred between the arrest and the prosecution are relevant to the determination of whether or not there was a malicious prosecution. Yes, but you said the issue turns on probable cause to arrest. That's ridiculous. A ridiculous assertion as to malicious prosecution, which turns on a malicious exercise of prosecutorial discretion after the arrest. But in order to... I mean, the briefs don't get it straight. In order to establish malicious prosecution, the plaintiff has to establish that there was not probable cause for the prosecution. Yes, and malice. And if there was probable cause, then they can't meet all the factors that are required to show a malicious prosecution claim. So the malicious prosecution... Wait a minute. That can't be right. But give me the best circuit case for that proposition. It's in the briefing, Your Honor. No, it's not. Okay, well... I mean, I didn't see it argued that way. Okay, under Arkansas law, in order for plaintiff to establish a claim for malicious prosecution, the plaintiff has to be able to demonstrate a lack of probable cause. I'm sorry, the plaintiff has to establish that probable cause existed for the prosecution. Right, that doesn't turn... That's not the arrest or the stop. That's the prosecution. Right, and in this particular type of prosecution, the circumstances that are considered as to whether or not there was probable cause for the prosecution are the same circumstances that are considered as to whether or not there was probable cause for the arrest. No. And the circumstances surrounding that. I mean, I'm sorry, I might be wrong, but I think, to me, that's just plain wrong. Okay, well, if we are to consider just the Fourth Amendment unlawful arrest claim, this Court does have jurisdiction because there are no facts in dispute in this case. Can I briefly go back to the malicious prosecution? The other side argues that this Court affirmed the denial of immunity on that case, on that before, and argues law of the case. What's wrong with that argument? Because the Court remanded the case to the District Court in order for there to be additional findings regarding the circumstances that happened after the traffic stop and leading up to the arrest. All of those facts and circumstances and the findings that were or would have been made by the District Court are relevant facts with respect to whether or not there's probable cause for the prosecution. Well, did this Court, in fact, affirm the denial of immunity on the malicious prosecution claim? Yes or no? Yes, it did affirm the denial, but it also noted that the issues relevant to the malicious prosecution significantly relied on what occurred between the time of the stop and the time of the arrest, which it remanded for additional findings on.  So my argument is those additional findings are relevant to the malicious prosecution claim that weren't before this Court before. Okay. Well, Part 2 of the opinion doesn't say that. Unless you say similarly limited. Our review is similarly limited when reviewing denials of official immunity under state law. The language that I'm referring to from the prior opinion is the validity of the initial traffic stop does not establish that Lockhart's subsequent arrest on suspicion of DWI and the DWI prosecution were also valid. These issues depend in significant part on what occurred between the time where initiated the stop and when he arrested Lockhart. That language isn't in Part 3 of the opinion. Our ruling that the initial stop was constitutionally valid does not establish lack of probable cause to prosecute Lockhart for DWI. Lockhart argues malicious prosecution is an intentional tort. The district court did not err in denying summary judgment. That doesn't, the focus is not on the prior analysis with regard to the stop. The language is there and it did seem to conflict with the affirmance of the malicious prosecution claim, but if it is this court's position that that is not properly before the court at this time, it's my position that a determination by this court that there was probable cause for the arrest will ultimately dissolve the malicious prosecution claim. The district court did find that there was not probable cause for Mr. Lockhart's arrest and erroneously held that a material question of fact exists as to whether it was objectively reasonable for Detective Ware to believe that Mr. Lockhart had committed the offense of DWI. This court recognizes and has previously held that the existence of probable cause and or arguable probable cause are questions of law to be decided by the court and that was set out in Jose v. City of St. Paul. Pursuant to Jose, once the district court determined what it believed were the relevant facts on pages 1 to 2 of the addendum, the district court should have determined whether there was probable cause or arguable probable cause based on those facts. Right, that's what the court did. The court actually held that... We'll talk about holding because if the key part of the court's opinion that you rely on, if I substitute the word infer for the word find, the court followed exactly the law as we have set forth. Well, the law with respect to probable cause... I respond to that. You're allowed... The court can infer in the non-moving party's favor disputed questions of fact at the preliminary stage to see whether qualified immunity is appropriate, right? And we review what the district court found or can be read as assuming to find. So when the court finds something, if you substitute the word infer, then you have, in my view, what we should view as the facts assumed by the court for purposes of qualified immunity summary judgment. And if those... If a jury would make those inferences and come out, you know, that... You can't withstand that analysis. You don't even attempt to deal with it. Well, pursuant to Adams v. Williams and the Nieder's case that's cited in the briefing, probable cause is required to be determined based on the totality of the circumstances at the time of the arrest. And the district court did not consider the totality of the circumstances. It only considered fragmented pieces of the facts without looking at all the facts. And if you look at all of the facts... We don't... We don't... We don't dissect opinions that way. May I make another inquiry here, please, counsel? What is the state of the record with respect to what actually happened at the stop? Do we have... We have the officer's testimony. Do we have Lockhart's testimony? We have the officer's testimony. We have Lockhart's testimony. We have a video. And the... What about the... There was... Was there not a passenger in the car? There was a passenger in the car. Was that passenger... His or her testimony here? I don't believe we have testimony from the passenger in the record. I think that's right. I just want to make sure. Here's the thing. If you take what... According to Officer Ware... I'm sorry. According to the officer, the plaintiff had bloodshot, glassy eyes and droopy eyes and was... He appeared sleepy and spoke. His speech was slurred and slow and he had trouble following directions and answering questions. He also failed sobriety tests. Is there anything in the record at all that contradicts all of those things? And if... Isn't that enough for probable cause to arrest? Yes. Considering the totality of all those circumstances together, that does constitute probable cause for the arrest at the time the arrest was made. These facts are not contradicted, are they? None of those facts are contradicted. But these ones... This is what the officer testified he saw at the scene. What is in dispute about all that? Nothing that the officer... Wait a second. I'm sorry, counsel.  It seems to... Well, I'm sorry. Go ahead and finish your answer. Nothing that the officer observed at the scene is in dispute. It is not... In that case, why is that probable cause right there? That is probable cause. That's probable cause to establish the constitutionality of the arrest. And I won't get into malicious prosecution on that point, but it's definitely probable cause to establish the constitutionality of the arrest. And it looks like I'm out of time. So where's the problem? That you just don't like the... You don't like the incomplete opinion reaching that conclusion? The problem I have with the... Well, the opinion reached the opposite conclusion, didn't it? The district court's opinion?  Yeah. Okay. Yes. And denied qualified immunity based on that conclusion. Thank you. Thank you. May it please this honorable court...  My name's Dan Carter, and I have the privilege of representing Christopher Lockhart. The first issue, as the court is well aware, the first issue the court needs to decide on an appeal for a qualified immunity is whether it has jurisdiction. The court's... Respectfully, the court's jurisdiction is limited on an interlocutory appeal for qualified immunity. The court has jurisdiction, as you well know, only if there's a pure legal issue. And this court is constrained by the facts that the district court found unless they are blatantly contradicted by the record. They're not blatantly contradicted by the record. The district court found that a material question of fact as to... Exists as to whether it was objectively reasonable for Detective Ware to believe that Mr. Lockhart had committed offense of DWI. And then he went on to state a lot of facts. The court did not find that he had probable cause to arrest Mr. Lockhart. In fact, the court's opinion... The question, though, of whether there's arguable probable cause is a legal question that the court had to determine, correct? Correct, based on the facts. Based on the facts. That are essentially undisputed. Respectfully, I disagree. What fact is disputed? Well, the validity of the test he performed at the scene, that the officer Ware performed the scene, the DWI test, the scene, because if you recall, he was taken to the court and he was given a blood alcohol test, which he tested zero for. But the claim here is it wasn't alcohol, it was drugs. I mean, that's... In fact, the gentleman admitted that he had been taking painkillers. Is that correct? Yes, but I don't think that's... If the court looks at the record, the narrative on appendix page 88, which is the Officer Ware's report, it's the narrative says... The narrative is... And this is after all the tests were performed at the police station, the 0.00, the drug recognition expert coming in, testing him. That's all post-arrest. No, he was booked. He was arrested already. That's post-arrest. I'm talking about the arrest. The law is if there's exculpatory evidence, then any probable cause that he may have, which we dispute that he had probable cause, because the tests were flawed at the scene. But anyway, there's all kinds of exculpatory evidence that eliminates any probable cause that he may have. It all turns on these facts, Your Honor. Why would he believe that? I don't know. Even if the sobriety test wasn't correct, with respect to some parts of it, not all parts of the sobriety test were undermined, were they by the... I want to concentrate, I'm sorry, on the circumstances of the arrest and what the officer said happened. Okay. There doesn't seem to be any dispute about that, about what happened at the scene, the facts. Well, at the scene... Is it disputed that he had glassy eyes, that he couldn't follow directions? No, but all this rests on... That's all Officer Ware's testimony and his narrative, and it all comes down to his credibility. Yeah, but you can't just... I think we have cases that say that if you don't have evidence, you've got to meet proof with proof. Correct. If you don't have proof, you can't just go to court on the hopes that the jury won't believe the witness. I don't disagree with that, Your Honor. I think you just said it came down to credibility. Well... And I just said you can't go to court just on the hope that the witness might be disbelieved. I'm just saying that in Coker v. State, their argument is based solely on his observations. The court should not credit an officer's depiction of the incident, and that's Coker v. State. Well, I don't know the case, but there may have been testimony there about what happened at the scene. Well, at the scene, there was a fellow officer at the scene because when Officer Ware radioed for backup... But he testified only as to why the gentleman might be limping. He testified that he was limping, and he testified that he spoke slowly. But that doesn't... That doesn't... It doesn't undermine the observation. And why does his testimony get to trump what... What we're talking about here is... I don't know. ...Ware felt about it, about what he perceives, right? Yeah. And apparently, what he perceives is exactly what the other officer perceived. He just had a different explanation for it. Isn't that right? I don't think so, Your Honor. I may have not understood your question, but Officer Ware was determined to arrest Mr. Lockhart. I think that's plain. Yeah. He may have had probable cause. And by the way, I don't think it's a subjective matter. It's whether an objective person in the circumstances would have had probable cause to arrest. And Judge Brooks found that he never had probable cause. I know. Yeah. And he cited facts. Judge Brooks... Well, facts... Never mind. I think we understand what the difficulty is. I might be wrong about it. Well, I read Judge Brooks' opinion. He thought the tests were flawed. He said something to the effect, the outcome of the test at the scene were what one would expect for a... I forget the age of... I'm just going to make up an age. A 72-year-old man who had recently had hip surgery, who had lifted his shoe, and one leg was shorter than the others. That is what Judge... That's one thing Judge Brooks said. He also stated he maintained control of his vehicle the whole time, that he was driving under the speed limit, that Ware had informed him that he had not been drinking, and hip surgery, the fellow officer at the scene, which we just discussed. And then, of course, there's the documentary evidence of 0.00. And then we talked about credibility. We argued before the district court that the field sobriety tests were subjective and flawed. And I think that's bolstered by the fact that the drug recognition expert came in later and conducted these same tests and found he passed. So, I mean, there's a lot of facts in the record. And whether he was charged with DWI drugs is not... I think it's also in dispute because of... I just said it, but if one looks at the narrative, it just says charged... And that's after all these tests at the station. It says he was charged with DWI and these other things. Driving offenses, booked and released. So, that's when the arrest occurred, when he was booked. No, he was arrested at the scene. Is that not your whole case? He's arrested at the scene? Well, that's part of our case. Well, not the whole case, because we got... He can't be arrested twice. I agree. But the court... This court has said a valid... An initially valid arrest, which you're not conceding, evaporates if there's explanatory evidence. And there was all this evidence back at the police station. Officer Ware even recognized it, because he says... He exclaimed on video, what do I need? Meaning, what do I need to arrest this guy? Well, he apparently thought he didn't have him arrested, because one gave him a blood alcohol test at the police station, brought in a drug recognition expert, and then booked him. Are you still pursuing your unlawful detention claim, or is it just the arrest? Is that the... I'm getting a little confused. The malicious prosecution... No, I'm sorry. I'm sorry. I'm back on the police station, okay? Okay. I understand you have an arrest... Unlawful arrest claim. Yeah. There was an unlawful detention claim, too. Yes. Where is that? When they kept him in the police station and booked him, so... Well, if the arrest was lawful, then that's... Yeah. Okay, so also, what's your position on the unlawful prosecution claim? The malicious prosecution? Yes. That it's a lot of the cases that it wasn't before in the court on remand. Okay. Now, also, I think, did you not also have an unlawful prosecution claim under the Constitution, in addition to the state malicious prosecution claim? Okay, Your Honor. I'm getting... I apologize. I'm getting a little fuzzy. We just came into the case on the first appeal, but I think that case... I think that claim was dismissed. I'm not... I'm not absolutely... Okay, well, I don't see anything in the brief about it. Yeah, yeah. I just want to make sure what we've got up to before... I did not address... I did not address anything. I don't have to, Your Honor. Okay, Your Honor. Mr. Carter, setting aside your law of the case argument for a second, if we were to disagree with you and think that there was, in fact, arguable probable cause for the arrest and the booking, would your malicious prosecution claim survive? Setting aside your law of the case argument. Yes, I believe so, and it may be up to the state court, Your Honor, at that point. I don't know, or we get into those supplemental jurisdiction and all that kind of argument. You know, the unlawful, the extended unlawful arrest argument, the circumstances at the station, that's a damages question. Basically, if the question becomes, was he immediately... Was his detention extended when they should have known that there wasn't probable cause to arrest him? That doesn't affect it. That doesn't affect the arrest. And it doesn't... It is... It's a separate claim. I didn't think we were even... We even had that claim. What I'm saying, what happened at the station is relevant because if there was any probable cause to arrest him, which at the scene, which we dispute, it evaporated once they started... At that point, at the station. You can't put the genie back in the bottle and say he wasn't... He was never arrested. We hereby declare, you let him go.  And it certainly affects whether you'd ever prosecute him. Right. But those are all separate claims. And the malicious prosecution, I mean, that turns on what happens after he's released and it goes to a prosecutor and what inquiry is made and so forth. And there's nothing here on that. Well, especially because we take the position in this briefing after remand that that was no longer an issue. What is the position? What is the situation now? What did the district court do as to that claim? On remand, the district court did not... What are we reviewing? I'm saying you're not reviewing the malicious prosecution claim because it wasn't the subject of a remand. Well, counsel says it's still alive. That's the question. Well, surprise. Counsel disagrees, Your Honor. What's your basis for saying it isn't alive? I'm not... I'm saying it's alive. I'm saying it's not alive in this appeal because nothing has changed. What is this appeal seeking to do with? This appeal is simply about qualified immunity and whether, based on the facts and the record, which this court has construed in Mr. Lockhart's favor, there was qualified immunity. And we say there's not. In fact, we go a little further and say this court doesn't have jurisdiction because it has to adopt the facts that... I didn't see the... I guess I'm back to what Judge Arnold... What's before us based on what the district court did. What is the status in the district court of the malicious prosecution claim? If we affirm... It's still alive in the district court if you affirm, yes. Well, where's the argument that it isn't alive? What is that argument? I don't understand it. I know you're... You guys have the position so backward that it's impossible to follow this case, frankly. I mean, all I'm saying, Your Honor, it wasn't a subject of remand. Which makes it still alive in the district court if this court affirms the district court on the appeal from the remand. Well, let's go back to Chapter 1, the statement of the issues presented. Because that's all we have to decide. Statement of the issues, page 2. It isn't even stated on page 2. Oh, here it is. Whether the district court erred in denying tort immunity and granting summary judgment on Lockhart's prosecution claim. The case is in the same position as it was in Lockhart 1. So if we affirm the district court on the first issue and it's back for trial on unlawful arrest or at least further summary judgment, this goes with it, right? Yes, because it was with it when this court remanded. I want opposing counsel to address that.  In rebuttal. Okay. I'm out of time, Your Honor. I appreciate your questions. Thank you. Thank you very much. You're welcome. Counsel, you know what I want to hear? How much time is there? Her time had expired, Your Honor. I've got time to answer that question. Your Honor, one more time, what's the question you want me to address? What are we doing with malicious prosecution? It's still in the case. The argument on appeal is basically, it's precisely a re-argument of what was argued to us in Lockhart 1. So what are we doing here about malicious prosecution? What are you asking us to do over on Lockhart 1 as far as I can read your brief? If the court reverses the district court and determines that there was probable cause for arrest of Mr. Lockhart, it's the city's position that the city of Salomon Springs should be granted immunity on the malicious prosecution claim. We aren't reversing one way or another. We're reviewing the denial of qualified immunity on unlawful arrest. We affirm or we reverse, and that doesn't go away. Cases survive the denial of qualified immunity. Well, what I'm asking the court to do is reverse the district court's denial of qualified immunity on the Fourth Amendment claim and reverse the district court's denial of tort immunity on the malicious prosecution claim. All right. On that, I read your brief. I read your brief in Lockhart 1. They are almost word for word. As far as I'm concerned, it's almost sanctionable to argue it again. You argue nothing new. The district court didn't do anything new.  So we would have to overrule our disposition in Lockhart 1 in order to reach out and grant qualified immunity now. If there were additional factual findings, which this court doesn't... No, no. You don't argue. You don't argue one way or another. Your brief is word for word. I went back and I read Lockhart 1 brief. They are almost word for word. My argument was based on the Arkansas Supreme Court decision Trammell v. Wright, which says an actor's good faith goes to whether or not immunity applies. And if there were facts that were found that determined there was arguable probable cause in this case, then... You're re-arguing Lockhart 1. Period. With additional factual findings. What findings? The findings that this court asked the district court to make on remand. Those aren't merits findings. No, they're additional factual findings that are relevant to whether or not there was arguable probable cause here. All right. Thank you, your honors. No argument. Argument has hopefully clarified some things. We'll take the case under advisement again. That would be excused. Pardon? That would be excused, your honor. Certainly.